The next case and last call on our last case on our call today is agenda number nine, case number 109033. People of the state of Illinois versus Angelo Thompson. You may proceed. Thank you and good morning, your honors. My name is Peter Fisher. I'm an assistant state's attorney from Cook County on behalf of the people. Your honor, the issue in this case is whether the holding and rationale of People v. Glasper that the failure to strictly comply with the mandates of this court's rule 431B is not per se reversible error. Whether that ruling and holding and rationale should apply to the amended version of the rule and there's no logical reason why it should not. As your honors are fully aware, this court changed rule 431B from the state that it existed in, Glasper, where it was incumbent upon the defense to raise a request to have the, what we've called for years, these air questions asked of juries. And now that that is required in all cases whether or not the defense asks for it. There is no reason in logic or rationale why the Glasper opinion that that is not per se error should not apply. And in fact, if you look at Glasper, the vast bulk of this court's reasoning in that decision still applies with equal validity to the case at bar. In Glasper, this court held in no uncertain terms that defendants do not have a right to 431B for questioning under either the United States or Illinois Constitution. And that a defendant's right to such questioning is the product of this court's inherent power to make rules regulating the conduct of circuit courts. That determination is completely unaffected by the amendment to the rule in this case. The mere fact that the rule has been made does not transmute this somehow into a constitutional issue, and it can't. And in fact, had that been the case, then Glasper would have had to have been decided differently, because the constitutional requirement would have existed whether or not the law, whether or not this rule ever existed or not. In Glasper, this court also recognized the type of error here does not fit into any of the United States Supreme Court's list of structural errors and that are subject to automatic reversal, and of course, the change in the rule does not change that one bit. The court in Glasper stated that the rule is designed to help ensure defendants are tried before a fair jury. We cannot say that the questioning is indispensable to a fair trial, and that is, again, true. When you look at this case from the perspective of the defendant, it matters not one whit whether the rule is changed. For those defendants who asked for these questions to be asked, as in Glasper, and were denied that opportunity, those defendants are in exactly the same position as defendants who don't get the questions asked now. From their perspective, it's the same trial. It's exactly the same trial. From the perspective of the judge, of the defendants, of the prosecutors, whether or not there's a fair trial, the question is answered the same in either case. So necessarily, when the Glasper court found that situation to be a fair and impartial trial, that has to obtain here as well. As we argued in Glasper, a finding that the violation of Rule 431B is per se reversible error would have the perverse effect that a violation of the rule would become more serious or worse than violations of the Constitution. As we stated, this rule is not constitutionally mandated. And yet we know from Arizona v. Fulminante and many U.S. Supreme Court cases that there are many, many instances of constitutional violations where that violation can be harmless. And for this court to say that the violation of the rule in this case can't be held harmless is, in a sense, elevating the status of the rule above that of the constitutional requirements, which would be interesting at best. The per se application of this per se reversal also leads to other incongruous possibilities. In Glasper, we argued to the court, and we do again, that there are situations, for instance, you have a case where you have a situation where the juror is not, the jury is not asked the question about would you hold it against the defendant if he didn't testify, or the question about would you hold it against the defendant if he doesn't present any evidence because he's not required to do so. And let's assume the defendant testifies and presents evidence. Under the per se reversal, you would have to reverse that case. I assert that that would be an absurd and meaningless exercise of authority, because yes. Do you believe this court has the authority to pass a rule that they protect with a promise of reversal upon violation of the rule? Absolutely. You can, but the question is should you. And as I've argued before, you should not, because the cost of the doing so outweighs the benefits of doing so. If this rule is not constitutionally necessary, which it is not, and it is not indispensable to a fair trial, which it is not, then the cost of per se reversal outweighs the benefits. What we're getting at here is clearly these jurors were properly instructed at the end of trial. There's no question. The core concepts of the Zerr questions are the same as the core concepts in Doyle violations. They're the same concepts as in Carter violations, Carter v. Kentucky. And yet we know that those are constitutional issues and this is not. But counsel, how is a trial court able to determine whether a juror harbors any kind of a bias under the rule if they aren't asked before if the person is selected as a juror? Well, Your Honor, frankly, that was one of the objections in Glasper as well, and this court already dealt with that in Glasper. So we would argue that stare decisis should apply, that it did not concern or, well, at least in the opinion, it does not reflect that that is an overriding concern. The fact of the matter, practically speaking, unlike the case that we just heard, there is not empirically or anecdotally a great societal disdain for the presumption of innocence or proof beyond a reasonable doubt. And in fact, if you look at the vast majority of the cases that come to you, if you actually look at the voir dire and whether it's a Zerr case or not, the number of times that jurors ever say, oh, I've got a problem with the presumption of innocence. Is there a record on this argument to support this argument? No. No, not this particular argument, Your Honor. In this case, we would have to be, what we're doing is guessing what jurors must be thinking in the absence of questions, and I'm trying to answer a question about how we would determine. And my response is relating to, it's not the same type of a problem as in the past case. And I think you can take judicial notice of the numerous records in front of you in which the Zerr questions are asked and nobody says anything. We also know that in Zerr, one of the arguments that we made, and this Court accepted, was the fact that jurors are presumed to follow their instructions. They were properly instructed in this case at the end of trial, and no one is contesting that. And that statement, that jurors are presumed to follow their instructions, was made by this Court in Glasper after this Court had already changed the rule, the 431B rule. So we'd argue that that presumption is not the same as the presumption is still valid. In fact, as a working presumption for the criminal justice system to go forward, I would argue that that is an extremely important and necessary presumption for the criminal justice system to operate. Because if we're going to go to the extent of not accepting the jurors accept their instructions, then we've got much bigger problems. So I think this Court has to hold on to the presumption that jurors are going to  Are you referring to the financial costs in retrial? Not just that, Your Honor. I think the justice system suffers whenever you've got individuals for whom the evidence is overwhelming, who got a fair trial constitutionally, and there are no constitutional violations. That calls into disrepute to the justice system when we have to try that case for what would be considered, possibly by many in the public, to be a technicality, and a technicality that doesn't relate to a fair trial, that doesn't relate to Should we rule on cases with a view to public opinion? I think in instances in which there is a cost-benefit, yes. I think when we take an extreme view, which I think this would be, of per se reversal, I think the justice system takes a hit. And I think that's important for people to have confidence in this system and ask Counsel, before Glasper, which I am familiar with, does their rules were enforced with per se automatic reversals? Not always, no. Well, certainly in some cases, more than some cases. And my question is, what damage, what objective damage was done by that fact? Well, there is a cost of retrial, and that is a cost. From the prosecutor's point of view, obviously, any retrial is a cost. It's difficult. There's a monetary cost. There's a cost to the victims and the witnesses in the case to have to relive the incidents. There is the question of I'm sure you can point out more, but is that cost greater than the cost of the potential damage to justice when these admonishments are not made before the trial begins? Well, I think it is, and I think that's part of what Glasper said. I mean, we've already got Glasper that decided I understand that. So I think, yes. But there has been a change in the rule, and I know I was, you thought I was out of earshot, but I was not when you were arguing. Oh, I certainly didn't think you were out of earshot. And we fully recognize the change in the rule, and we believe judges should ask these questions. We have no problem with them asking the questions, but are they constitutionally necessary? No. How can we guarantee they'll ask the questions? You can't guarantee. We've already decided that it's very important to do, but how can we nudge them along? You can't guarantee anything. And I concede that these questions should be asked, and I am as perplexed as you are as to why they're not being asked. We have seminars instructing our prosecutors to point out that they're not being asked. I know the judiciary is having seminars to ask the questions. I know that there's a form, which all begs the question, though, that's presented here, that certainly the questions should be asked. But the issue here is whether that one small change is enough to convert this into, per se, reversible error. Mr. Fisher, I want to follow up on Justice Freeman's question. I think in response to it you mentioned something with regard to that retrials are costly, especially when the evidence is overwhelming. I want to know, why is the weight of the evidence against defendant relevant to the possible assistance to juror bias? Why is that relevant? Well, it's not directly relevant on that, but it is certainly directly relevant on whether or not harmless error can be applied. And that's the standard that this Court accepted in Glasper. And there's a slightly different twist here, and that's the forfeiture twist. Because by ruling differently in this case than you did in Glasper, you would essentially be saying that a defendant who objects is in a worse position than a defendant who doesn't object. Because this defendant didn't object. This defendant didn't say anything when the judge didn't ask the questions. And it didn't come up in the post-trial motion. Glasper was a harmless error case. The defendant in Glasper said, I'd like these questions asked, and the judge in that case said, no, I'm not going to ask the questions. In this case, the defendant didn't request that. Now, granted, he didn't have to request that, but he could have brought it to the judge's attention and said, judge, you know, you forgot to ask the zero questions. You forgot to ask the 431B questions. And we wouldn't be here today, presumably. Presumably the judge would have done the right thing, and we would have all been handled. But in order to get there, you have to hold this defendant in a better position than the defendant in Glasper. And I would assert that perverts the incentives in these cases. You want everyone to object. I agree the prosecutor should have said something. The defense attorney should have said something. The judge should have done it. But those didn't happen. But you don't want to create a system where the defendant wins by not objecting. Because there's a, and we call it the get out of jail free card. I mean, basically, if the defense is sitting there and knows the judge isn't asking those questions, they know they've got an automatic reversal in their pocket, no matter what happens during the trial. And I would say that would pervert the normal forfeiture rules in this case. And ultimately, as I said, when we've already said that the Doyle violation can be harmless and a Carter violation can be harmless, it's rather disingenuous to say that this rule violation can't be harmless. Because it does, in a sense, elevate a violation of the rules as to being more egregious or worse than a violation of the Constitution itself. In short, Your Honors, we'd ask that you hold that the per se reversal rule not be adopted, that the rationale and holding of Glasper be extended to the facts in this case. Thank you. Thank you, Mr. Bishop. Good morning, Your Honors. May it please the Court, my name is Elena Penick, appearing on behalf of Defendant Appellee Angelo Thompson. This Court amended Rule 431B so that judges in every case must ask whether prospective jurors understand and accept the forfeiture trial principles. This Court can foster future compliance by responding to violations with a bright-line rule of reversal. The State argues that remanding for this case for a new trial conflicts with this Court's holding in People v. Glasper. However, both the reasoning and the holding in Glasper were limited to the old rule, which only required questioning about the fair trial principles when the defendant requested them. It is a cardinal rule of statutory construction that a material change in an unambiguous law is intended to affect a change in the law as it formerly existed. When this Court amended the rule to require 431B questioning in every case, it signaled that skipping those questions was riskier than at first believed, and that the integrity of the proceedings was at stake. Given the importance of Rule 431B questioning and the many functions it serves, this Court has every reason to stand by its decision to make it an essential part of voir dire. As this Court recognized in People v. Zare, individuals who do not know and embrace the four principles upon which our country's notion of a fair trial is built are not qualified for jury service. The most efficient way to find out whether an individual possesses the requisite qualifications is to ask him or her during voir dire. Since jury deliberations remain secret, voir dire is the last chance a judge will have to probe for prejudice and confusion amongst the individuals who will be responsible for deciding the defendant's fate. Counsel, how do you address the then People v. Shaw decision out of this Court in 1999, I believe, we held that per se reversal is required only with respect to constitutional violations that rise to the level of structural error, and although the rule changed after Glassbar, we said definitively at page 196 of Glassbar that this Court, let's see, questioning is not a constitutional right. Defendants do not have a right to rule 431B questioning under either the United States or the Illinois Constitution. Doesn't that make the State's argument that the failure to comply with 431B simply cannot be reversible per se in light of the juxtaposition of Shaw and Glassbar? Well, Your Honor, I think the question is not in this case whether the error is reversible per se, but whether, as the State acknowledged, this Court should choose to reverse under these circumstances. It's not that the Court's hands are tied, but when you have a situation where the Court has written a rule which is extremely clear and so easy to follow you could read right from it, and yet judges aren't necessarily complying. They're improvising. They're forgetting principles. Well, are you okay with a harmless error analysis? I'm okay with a harmless error analysis that views harmlessness in terms of the quality of the voir dire rather than the strength of the evidence at trial. I think in Glassbar even this Court acknowledged that if we knew that the defendant was tried by a jury that was biased in some fashion, that the Court would have no problem reversing and, in fact, would be obligated to. So in a situation where we don't know. So you're asking for, I mean, at best, a refinement of our harmless error analysis, which would look at whether the defendant was tried by a jury. Well, again, prejudice in terms of whether the rule was complied with. I mean, the rule serves a prophylactic purpose, so we really can't tell just by looking at the strength of the evidence how the rule's compliance or noncompliance affected the outcome of the trial. And you don't think that would be tantamount to per se reversal? I mean, it's a force of rule that it wrote for a reason, and just to send a message that, you know, we mean business and that this is really not a difficult thing to do. It serves an important purpose. We can't say, you know, how great the harm is when there is noncompliance. So if we just get with the program, then we won't have to really deal with this issue much longer. You know, it's really a temporary problem, I think. Are you or are you not arguing for a bright-line rule that says if you fail to give these admonishments, the case will be reversed? Yes, Your Honor. Certainly in a case like this where one of the principles wasn't covered at all. I mean, the third and fourth principle were shortchanged especially. Well, counsel, explain to me what's the difference between you're not advocating for a per se rule, but you are advocating for a bright-line rule. And you've just told Justice Thomas that you don't really have any problem with the harmless error analysis. I guess I'm really confused. Well, bright-line rule is an attempt to convey the practical concerns of the court with this rule. Per se suggests that Your Honors don't have a choice about what to do. Like if there's a serious constitutional violation, your hands are tied. We recognize that's not the case. But you drafted this rule for an important purpose, and a bright-line rule will foster that purpose by ensuring compliance in the future. Well, what's the difference? I don't understand. What's the difference between per se and bright-line? Well, I guess it's a subtle point, but per se meaning that Your Honors don't have a choice about whether to reverse as opposed to bright-line rule, meaning you choose to reverse in this instance to prevent the problem from recurring and to ensure enforcement with your rules. But there are a number of errors that occur in trial courts every day that don't rise to the level of structural error that we review with a harmless error analysis. So you're asking us to elevate our – I understand what you're doing. You're telling us don't be the repeating, threatening parent, right? This time I really mean it. But wouldn't we be elevating our rule above other errors that don't rise to structural error where we do hold harmless error analysis? And we issue decisions on those type of errors term after term after term and employ harmless error analysis. Well, it depends on which error we're talking about. To the State's point about Carter violations, that's a situation where, you know, the right to an adverse inference instruction is contingent upon a defendant's request. So in that situation, like Glasper, we can't say that that right is so important that it has to be reversible error in every case. But when we decide that this kind of questioning has to occur all the time, then it does make sense to elevate the rule above other errors. It does make sense to elevate this error above other types of errors that might be subject to harmless error analysis. I'm sorry. And how are we supposed to do that? I'm sorry, Your Honor? If we take, per se, reversibility off the table, how are we supposed to tell the judges to get with the program? I mean, maybe we're quibbling over the term per se. But I think establishing a bright-line rule that says you have to follow this exactly as it's stated or else we're not going to affirm, I think that's how you get compliance. As I was saying, since jury deliberations remain secret, voir dire is the last chance a judge will have to probe for prejudice or confusion. And Rule 431B questioning also has a significant impact on which jurors will be selected for service, since trial attorneys can use the jurors' responses to guide their peremptory challenges and their challenges for cause. Also, the questioning serves an educational purpose, since it allows prospective jurors to become acquainted with the principles before they begin digesting the trial evidence. In Glasper, this Court rejected the idea that the absence of Rule 431B questioning makes it inevitable that the jury was biased, since jurors are presumed to follow their instructions. But this observation sort of misses the mark, since prophylactic procedures like Rule 431B are about avoiding risk. In this case, the risk, the possibility or even the probability that the jurors who decided the case were biased or unfair. And this Court has to consider whether it's content to accept a verdict that might very well have been reached by jurors who do not accept the presumption of innocence, for example. The reason the State argued that there can be an absurd result, I think, from failure to give the rule. I think the example was the judge gives all, gives three of the four admonishments, but fails to say that the defendant does not have to testify, so he's violated the rule, or the trial judge has. The defendant testifies. Per se reversible? I would say yes, Your Honor. I mean, certainly that's not the situation presented by this case. But even if the defendant testifies, it's important for the jury to understand and accept that the defendant didn't have to testify. You know, that they, if he hadn't testified, they couldn't hold that against him. I think that knowing that could very well affect the sort of credibility determinations that go into judging that testimony. So that there's really no situation where it's a good idea to just skip any one of the principles under the facts of that case. Contrary to my opposing counsel's argument, empirical evidence does suggest that these principles are not safe in the hands of real jurors, who often think that a man who is on trial is probably guilty, especially if he doesn't take the stand himself to say otherwise. By implementing a simple procedure that increases the likelihood of jurors actually following through on their sworn duty to follow the law, this Court placed the defendant's right to a fair trial ahead of the presumption that jurors are presumed to follow their instructions, but still held true to the pragmatic purpose of that rule. It is often stated that this Court's rules are not mere suggestions, that they have the force of law and they should be followed. But the reality is, even if you say this in boldface type, there is no compliance without enforcement. And this is evidenced by the numerous decisions coming out of the appellate court in which, you know, regardless of whether it's been found reversible error, judges have acknowledged that there was not compliance with the rule. And in this case, Mr. Thompson's trial began after the rule took effect, but the judge didn't even substantially comply. The jurors were never asked whether they accepted that Mr. Thompson was presumed innocent. They never asked whether they accepted that the State bore the burden of proof beyond a doubt, beyond a reasonable doubt. The judge didn't conduct any questioning about the third principle, that the defendant doesn't have to present any evidence. And the judge neither admonished the prospective jurors about the fourth principle, nor asked them whether they understood or accepted that they were prohibited from holding Mr. Thompson's failure to testify against him. The defective questioning was especially harmful in this case, since Mr. Thompson did not testify or present a case in chief. A bright line rule of reversal will sacrifice finality in the short term, but will quickly lead to consistent application of amended Rule 431B below. The alternatives, saving reversal for only the most closely balanced trials or only the most egregious rule violations, will send a message to trial judges that compliance with this Court's amended rule is in fact just a suggestion. It will leave the door wide open for appellate courts and litigants to quibble over whether a judge's compliance with the rule can be considered substantial or strict, or whether the evidence of guilt was closely balanced, overwhelming, or somewhere in between. The jurors ---- Would you comment on the State's argument that this is a get-out-of-jail-free card if the defense counsel does not object? And then maybe follow up, would it be ineffective assistance of counsel or defense counsel to object, knowing that if counsel does not object, there is a get-out-of-jail-free card, an automatic reversal? Well, I think this Court has to consider whether it's more important to prevent, you know, an inadvertent windfall in certain circumstances or to enforce the rule that it decided was worth imposing in every single criminal trial. So I don't think that any accidental advantages to defendants are persuasive to this Court's decision about what to do when there are violations. Also, the prosecutor even acknowledged that they have the ability and even the duty, I think, to step in and ensure there's compliance as well. But should defense counsel intentionally not call this to the trial judge's attention, knowing that if the admonishments aren't given, but he's still comfortable that he has a good and fair jury, don't call it to the court's attention, don't correct it, I get a free reversal if I'm convicted? Well, I think if ---- I definitely don't think defense attorneys should do that. But to the extent that they want to take that route, I don't think it will be long before prosecutors get hip to that scenario and step in and that no one would ever let that occur. You know, that's just something in no one's interest. The judge wouldn't want it. The prosecutor wouldn't want it. So it's unlikely that they could get away with that scenario, nor should they try. So the surest way to secure future compliance with amended Rule 431B is to affirm the appellate court's decision in this case. If there are no further questions, we ask that you do that. Thank you. Just a couple points, Your Honors. Along the lines of the bright line reversal argument, in addition to the scenario that I gave about the defendant testifying anyway, even though the instruction was given, that is not just a hypothetical situation. That is actually happening in the appellate court, and in fact, as Your Honors are aware, not only are there dozens of these cases which have been decided in the appellate court, there are dozens and dozens still that have not yet been decided. But there's an additional example of an absurdity. Let's assume that the judge doesn't ask any of the questions, clearly violates the rule. But let's assume that the defense attorney does, asks all the questions. Under the bright line rule, that's a violation. That's per se reversible. The purpose of the rule is to ferret out whether or not any of these potential jurors have a bias against any of these rules. That purpose is effectuated when the defense attorney asks the questions. And yet, under the bright line scenario, that would be per se reversible. I assert that that's an absurd result. However, counsel, the court under the rule is required to ask the court. Yes, that's what I'm saying. The court is required to ask them, but let's say they don't. And the defense attorney does anyway. The rule doesn't say the defense attorney can't ask the questions. It just said that, and in fact, in many courtrooms, the defense attorneys ask all the questions, and the prosecutors. I mean, judges ask a couple preliminary things, and then everything is thrown out to the attorneys themselves. I'm positing a situation where the court does not ask those questions, even though I agree the court has to. But the defense attorney does. And the same information is out, the same comment we've had, and we find out whether those jurors have a bias against the Zara principles. And again, I assert that's an absurd result. Counsel makes a statutory construction argument that we have to look at the fact that the rule has changed and effectuate the intent of the court and change the rule. Well, the rule changed to say the court must ask the questions. And that's very clear, and the court does have to ask the questions, and we agree with that. The corollary that there's something behind the rule that we have to get into when the rule's clear on its face, I think, is a logical leap not provided for in statutory construction analysis. The other thing to remember is that the judges, as they sit there before trial, the judges don't like to try cases again. I mean, nobody likes to retry the same case. There's no point to it. Nobody benefits from this in a case in which the evidence is overwhelming. But the judges don't know that before trial. So the notion that they're just going to blow off their Zara responsibilities and their 431B responsibilities just because they can, I think that's unrealistic. They still, since they don't know the evidence is going to be overwhelming, they take a very big risk in not asking those questions, a risk that they may have to try that case again in the next year or two. And I think that is enough of an incentive. Aside from the fact that they're being called out and said you didn't follow this rule, the mere fact that the case isn't reversed or not doesn't necessarily mean that the judge doesn't take heat for not following the rules. I would say that there's some level of professional embarrassment for being called out by the appellate court or by the Supreme Court for not following the rules. And that in itself is important to remember. Really, you know, from the viewpoint of who's most harmed in these cases, it would be, you know, the prosecution and the victims in the cases rather than the judge. So reversal in and of itself is not the be all and end all of sending the signal or if this whole case is about sending signals, the signal can still be sent by the appellate court or by your honors by saying judge, you should have done this. Wake up, do it. And I think that carries a level of professional embarrassment that most judges would like to avoid. In any event, your honors, we would ask that you not find that there is a per se violation. Thank you. Thank you, counsel. Case number 109033 will be taken under advisement.